UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR10-5293RJB |
| Plaintiff, | ORDER DENYING MOTION TO EXCLUDE DEPOSTION TESTIMONY OF D.P. |
| v. | |
| ROBERT UNDERWOOD JR., | |
| Defendant. | |

This matter comes before the court on the above-referenced motion (Dkt. 142).  The court has considered the records and files herein and all documents filed in support of and in opposition to the motion, the deposition testimony of D.P., and heard oral argument of counsel on February 7, 2014.  For the reasons stated below, the motion should be denied.

The defendant urges that the court exercise its discretion to exclude the deposition testimony of D.P., the alleged victim in this case, because of "a confluence of factors" that defendant alleges have denied his right to fundamental fairness in this prosecution.  (Dkt. 142 at 2.)

1      The factors alleged include the following:

2          1.   The fact that D.P. died before the second portion of her deposition could be

3               conducted.

4          2.   The fact that the government failed to disclose *Brady* material regarding D.P.'s

5               mental condition.

6          3.   The inability to have a psychological evaluation of D.P. conducted.

7          4.   The government's actions in discouraging delay of the defense's post deposition

8               motion.

9          The court will discuss each of these factors below.

10     <u>The fact that D.P. died before the second portion of the deposition, as ordered by Judge</u>

11     <u>Settle, could be conducted.</u>  D.P.'s deposition was taken pursuant to court order September 22,

12     2010.  At that time, defense counsel had full opportunity to cross examine D.P.  D.P. died on

13     February 13, 2011.

14     Following that deposition, a superseding indictment was issued (Dkt. 28).  Defense

15     counsel moved for an additional deposition (Dkt. 36).  The reason provided by the defense for an

16     additional deposition was because the First Superseding Indictment extended the time periods

17     during which the defendant is said to have sexually assaulted D.P.  Judge Settle granted the

18     motion for an additional deposition on those grounds (Dkt. 86).  The re-deposition was not asked

19     for or granted on the basis of a perceived necessity to inquire further into D.P.'s impaired mental

20     capacity and use of medications, or the effect that those things had on her memory.

21     Subsequently, the Superseding Indictment was dismissed, and the case is now proceeding

22     on the original indictment, which was the subject of the full deposition of D.P. on September 22,

23

24

ORDER DENYING MOTION TO EXCLUDE
DEPOSTION TESTIMONY OF D.P.- 2

1   2010.  The fact that D.P. died before a second deposition was taken is not a basis to strike her

2   first deposition, under these circumstances.

3       <u>The fact that the government failed to disclose *Brady* material regarding D.P.'s mental</u>

4   <u>condition.</u>  On August 26, 2010, the government filed an emergency motion for video deposition,

5   along with the declaration AUSA Bruce F. Miyake (Dkts 20 & 20-1).  These documents

6   disclosed D.P.'s physical condition and medications to the defense.  Before the deposition was

7   taken, FBI Special Agent Scott Saxon visited with D.P. about two weeks before and about one

8   week before the deposition.  What he learned at those meetings is set forth in his testimony

9   before the grand jury (Dkt. 144 (sealed) at page 7) as follows:

10      Q.      During the visit a week before, how would you describe her condition?

11      A.      She had worsened.  She had a hard time concentrating.  Her memory wasn't as

12  good.  She had difficulty remembering names, finding phone numbers.  She seemed irritable.

13      Q.      Did she say if the medication made her tired?

14      A.      It did.

15      Q.      And did she appear to nod out a couple of times when we talked to her?

16      A.      Yes

17      The defense complains that this additional information regarding D.P.'s worsening

18  condition amounted to *Brady* material (*Brady v.* Maryland, 373 U.S. 83 (1963)), and should have

19  been disclosed to the defense before the deposition, when the disclosure would have been of

20  value to the accused (*See U.S. v Gordon,* 844 F.3d 1397, 1403 (9th Cir. 1988)).

21      The subject information did not amount to *Brady* material.  The defense had from Mr.

22  Miyake's motion and affidavit (Dkts 20 & 20-1) sufficient information about D.P.'s condition to

23  examine her about her condition, both physical and mental, and to examine her about her

24

1   medications and the effect of medications.  The subject information of the agent's observations

2   was not substantially different than the information that the defense had before the deposition

3   and the defense had its own opportunity at the deposition to observe D.P. and to determine her

4   mental acuity and to question her about it.  Such additional information would not put the case in

5   such a different light as to undermine confidence in the verdict.  *Kyles v Whitley*, 514 U.S. 419,

6   435, (1995).  Nor did the defendant suffer prejudice from lack of such an additional report.

7   *Strickler v Greene*, 527 U.S. 263, 281-82 (1999).  The failure of the government to provide an

8   additional report regarding the agent's observations does not amount to a *Brady* violation.

9       The inability to have a psychological evaluation of D.P. conducted.

10      There is nothing in the record that indicates that the defendant could not have moved to

11  have a psychological evaluation of D.P. between the time of her deposition and the time of her

12  death.  Either plaintiff or defendant could have requested such an evaluation at any time.

13  Nothing prevented either side from making such a motion.

14      The government's actions in encouraging delay of the defense's post-deposition motions.

15      Again, nothing in the record indicates unfairness on the part of the government in its

16  actions between D.P.'s deposition and her death.  The record, rather, reflects that both plaintiff

17  and defendant were trying to figure out what to do about D.P.'s obvious physical and mental

18  issues and neither unfairly discouraged the other from taking any chosen action.  The prosecution

19  considered requesting a mental evaluation of D.P. but that did not come to fruition.  The

20  government never prevented the defense from acting on its own or forcing the issue.  There was

21  nothing unfair about the government's actions

22      Under all these circumstances, the Motion to Exclude the Deposition Testimony of D.P.

23  should be denied.  This case certainly does not present an ideal progression, but nothing that

24

1  occurred causes this court to conclude that fundamental fairness to Mr. Underwood was in some

2  way denied or that the court's discretionary power to exclude the deposition should be exercised.

3          What is, perhaps, a more serious question is the question of whether the government has

4  sufficient admissible evidence in D.P.'s deposition testimony to present a jury question on all

5  counts.

6          Therefore, it is now

7          ORDERED that the Motion to Exclude Deposition Testimony of D.P. (Dkt 142) is

8  DENIED.

9          The Clerk is directed to send uncertified copies of this Order to all counsel of record and

10 to any party appearing *pro se* at said party's last known address.

11         Dated this 12th day of February, 2014.

12

13

14         ROBERT J. BRYAN
           United States District Judge

15

16

17

18

19

20

21

22

23

24

ORDER DENYING MOTION TO EXCLUDE
DEPOSTION TESTIMONY OF D.P.- 5